# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SCP 2003A-24 LLC, et al. | CASE NO. 2:25-cv-01344-ALM-EPD |
| Plaintiffs, | JUDGE ALGENON L. MARBLEY |
| v. | |
| COLUMBUS HIGH STREET CVS INC., et al. | DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |
| Defendants. | |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Ohio CVS Stores, L.L.C., Columbus High Street CVS, Inc. (the predecessor to Ohio CVS Stores, L.L.C.), CVS Health Corporation (improperly named in the First Amended Complaint as CVS Corporation), Maryland CVS Pharmacy, L.L.C. (improperly named in the First Amended Complaint as CVS Bethesda, L.L.C.), and CVS Pharmacy, Inc. (improperly named in the Complaint as Weymouth Retailer, Inc.) (collectively "Defendants") respectfully request that Plaintiffs' First Amended Complaint (the "Complaint") be dismissed for failure to state a claim.

As explained more fully below, Plaintiffs' entire case rests on the claim that Ohio CVS Stores, L.L.C. ("CVS") defaulted on a lease obligation to deliver a letter of credit. But as the lease makes clear, CVS's obligation to deliver a letter of credit arises only if there was an outstanding loan at the time the credit rating of CVS's guarantor dropped. As Plaintiffs' own allegations confirm, the guarantor's credit rating dropped nine months before the alleged loan was obtained. In addition, there is no allegation in the Complaint that the alleged loan was secured by the leased premises, CVS was not notified of the loan, it was not provided with a notice of default and opportunity to cure the alleged default, and the alleged loan is no longer outstanding. As such, there is no default of the lease and Plaintiffs' claims fail as a matter of law.

For these reasons, and for all of the reasons set forth in Defendants' Memorandum in Support of their Motion to Dismiss, which is incorporated herein by reference, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Dated: November 26, 2025                  Respectfully submitted,

                                             */s/ Julie A. Crocker*
                                             Julie A. Crocker (0081231)
                                             Taft Stettinius & Hollister LLP
                                             200 Public Square Suite 3500
                                             Cleveland, OH 44114-2302
                                             Telephone: (216) 241-2838
                                             Facsimile: (216) 241-3707
                                             jcrocker@taftlaw.com

                                             Nicholas J. Pieczonka (0087062)
                                             Taft Stettinius & Hollister LLP
                                             425 Walnut Street, Suite 1800
                                             Cincinnati, OH 45202-3957
                                             Telephone: (513) 357-9603
                                             Fax: (513) 381-0205
                                             npieczonka@taftlaw.com

                                             Jonathan N. Olivito (0092169)
                                             Taft Stettinius & Hollister LLP
                                             41 South High Street, Suite 1800
                                             Columbus, OH 43215-6106
                                             Telephone: (614) 220-0236
                                             Fax: (614) 221-2007
                                             jolivito@taftlaw.com

                                             *Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SCP 2003A-24 LLC, et al. | CASE NO. 2:25-cv-01344-ALM-EPD |
| Plaintiffs, | JUDGE ALGENON L. MARBLEY |
| v. | |
| COLUMBUS HIGH STREET CVS INC., et al. | DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |
| Defendants. | |

## INTRODUCTION

Defendant Ohio CVS Stores, L.L.C. ("CVS") operates a retail store and pharmacy at 2160 N. High Street in Columbus, Ohio (the "Premises"). Plaintiff SCP 2003A-24 LLC ("Landlord") is wrongfully claiming that CVS is in breach of its Lease (defined below) so that Landlord can attempt to take possession of the Premises.[1]

Specifically, Landlord claims that CVS defaulted under the Lease when it failed to tender a letter of credit after its guarantor's credit rating dropped. The plain language of the Lease—and Landlord's own allegations—establish that CVS is not in breach of the Lease and was not required to tender a letter of credit. Plaintiffs' First Amended Complaint (the "Complaint") should be dismissed in its entirety.

## BACKGROUND[2]

### A. The Lease Between Landlord And CVS.

Landlord and Columbus High Street CVS, Inc. entered into a sublease dated September 8, 2003 (the "Lease") for the Premises. (Complaint, ¶ 11, ¶ 12 (ECF No. 5); Exhibit A to Complaint

---

[1] Upon information and belief, Landlord wants to redevelop the Premises to high-rise residential apartments.
[2] These allegations are taken directly from the First Amended Complaint because the Court is required to accept these allegations as true for purposes of this Motion to Dismiss. Nothing contained herein shall be interpreted as an admission by CVS as to the truth of any of the allegations cited herein or in the First Amended Complaint.

(ECF No. 5-1, PageID #1762).) Columbus High Street CVS, Inc. merged into Ohio CVS Stores, L.L.C., which is the current tenant under the Lease. (*Id*. at ¶ 6, ¶ 11.) In connection with the Lease, CVS Corporation (now known as "CVS Health Corporation" and referred to herein as the "Guarantor") executed a Corporate Guaranty. (*Id*. at Ex. F (ECF No. 5-1, Page ID #2205).)

### B. Landlord's Alleged Loan And Claims Of Default By CVS.

Plaintiffs allege that an unnamed lender extended a loan to Landlord and that CVS was made aware of this loan on September 26, 2025 by letter. (Complaint, ¶ 17.) Landlord further alleges that at the time it provided CVS with notice of the loan, "the credit rating of the Guarantor (CVS Corporation) was downgraded below Baa2[.]" (*Id*. at ¶ 21.) As a result of this credit downgrade and the "outstanding" loan, Landlord claims that, per Section 48 of the Lease, CVS was required to deliver a letter of credit to Landlord's lender within 30 days of being notified of the loan. (*Id.* at ¶ 22, ¶ 23.)

Thirty days after Landlord alleges it sent its notice letter to CVS, Landlord contacted the lender "to confirm that the Tenant [CVS] had failed" to deliver a letter of credit to the lender. (*Id.* at ¶ 24, ¶ 25.) As a result of CVS's failure to deliver the letter of credit, Plaintiffs allege that Landlord defaulted under its alleged loan. (*Id.* at ¶ 25.) This prompted Landlord to pay off the balance of the loan on October 27, 2025. (*Id*. at ¶ 26.)

That same day, Landlord filed this lawsuit and issued a "Three-Day Notice" to CVS instructing CVS that it had until October 30, 2025, to vacate the Premises. (*Id*. at ¶ 54; Ex. G to Complaint (ECF No. 5-1, PageID #2218.) The Notice states that CVS is in default "of its obligations under Section 48 of the Lease which is an incurable default." (*Id*.)

2

Based on this alleged default, Plaintiffs assert claims for breach of the Lease (Count One), breach of the Corporate Guaranty (Count Two), declaratory judgment (Count Three), and restitution (Count Four). Each of these claims fails because CVS is not in default of the Lease.

### C. CVS Is Not Required To Deliver A Letter Of Credit Unless (1) A Loan Secured By The Premises Is Outstanding At The Time Of Guarantor's Credit Rating Drop; And (2) Landlord Notified CVS In Writing Of The Loan.

Plaintiffs' entire Complaint centers around whether CVS is in default of Section 48 of the Lease because it allegedly failed to deliver a letter of credit to Landlord's lender. Section 48 of the Lease provides, in relevant part:

> If at any time the credit rating of the unsecured senior debt of the Guarantor [i.e., CVS Health Corporation] shall fall below Baa2 (by Moody's) or BBB (by S&P) **and a Loan shall be outstanding**, Tenant shall, or shall cause Guarantor to, deliver to Lender **within thirty (30) days of such downgrade** a clean evergreen irrevocable letter of credit in form acceptable to Lender, issued by a bank headquartered in the United States which has a credit rating of at lease Aa2 by Moody's and AA by S&P[.]" (Emphasis added.)

As defined in the Lease, "Lender" includes "any person that makes a loan or loans (such loan or loans collectively referred to herein in the "Loan") to Landlord which is secured by a mortgage, deed of trust or similar instrument with respect to the Premises and of which Tenant is advised in writing by Landlord." (Complaint, Part I, Section 17.)

Thus, based on Sections 17 and 48 of the Lease, CVS is required to deliver a letter of credit to Landlord's Lender only if Guarantor's credit rating of its unsecured senior debt falls "below Baa2 (by Moody's) or BBB (by S&P)," and each of these conditions is met: (1) Landlord had an outstanding Loan at the time of the credit rating drop; (2) the Loan is secured by a mortgage, deed of trust or similar instrument with respect to the Premises; and (3) Landlord advised CVS in writing of the Loan. (Ex. A to Complaint, Sections 17 and 48 (ECF No. 5-1, PageID #1768 and #1831).)

3

None of these conditions is satisfied, and as explained below, Plaintiffs' claims fail as a matter of law.

### D. Landlord Claims That CVS's Alleged Breach Of The Lease Results In Cross-Defaults On Two Other CVS Leases.

On the same day that Landlord and CVS executed the Lease for the Premises, Plaintiff SCP 2003A-14, LLC and Defendant CVS Bethesda, L.L.C. (n/k/a Maryland CVS Pharmacy, L.L.C. and referred to herein as "Maryland CVS") executed a lease for a property in Bethesda, Maryland (the "Maryland Lease"). (Complaint, ¶ 14, Ex. B (ECF No. 5-1, PageID #1904).) Also on that same day, Plaintiff SCP 2003A-11, LLC and Defendant Weymouth Retailer, Inc. (n/k/a CVS Pharmacy, Inc. and referred to herein as "CVS Pharmacy") executed a lease for a property in Weymouth, Massachusetts (the "Massachusetts Lease"). (Complaint, ¶ 14, Ex. C (ECF No. 5-1, PageID #2048).)

The Lease, the Maryland Lease, and the Massachusetts Lease each contains a "cross-default" provision, which states that an event of default under one of these leases results in an event of default under the other leases. (Exhibits A – C to Complaint, Section 23(xiii) and Schedule 23.) Plaintiffs allege that, as a result of CVS's default under the Lease at issue, Maryland CVS and CVS Pharmacy are also in default of the Maryland Lease and the Massachusetts Lease, respectively, based on the "cross-default" provision in those leases. (Complaint, ¶ 46 - ¶ 48.)

Plaintiffs seek a judgment from this Court declaring that CVS's alleged default under the Lease resulted is an event of default under both the Maryland Lease and the Massachusetts Lease. (Complaint, Count Three.) Because Plaintiffs cannot establish that CVS is in default under the Lease at issue, Plaintiffs' request for a declaratory judgment that the Maryland Lease and Massachusetts Lease are in default likewise fails and should be dismissed.

## **LAW AND ARGUMENT**

To survive a 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions;" it must "raise a right to relief above the speculative level." *Bell Alt. Corp. v. Twombly*, 50 U.S. 544, 555 (2007). In this regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Legal conclusions and unwarranted factual inferences are not presumed to be true. *Heyward v. Cooper*, 88 F.4th 648, 653 (6th Cir. 2023) (citing *Iqbal*, 556 U.S. at 679).

Beyond the complaint, the Court may also consider "'exhibits attached to defendant's motion to dismiss' that are 'referred to' in the complaint and 'central to' its claims." *Droesser v. Ford Motor Co.*, 2023 U.S. Dist. LEXIS 57304, *9-10 (quoting *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). "When a document contradicts allegations in the complaint, rendering them implausible, the exhibit trumps the allegations." *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) (quotation omitted).

### A. Plaintiffs' Claim For Breach Of The Lease Fails As A Matter Of Law Because CVS Was Not Required To Deliver A Letter Of Credit.

Landlord asserts that CVS defaulted under the Lease because it "did not cause" a letter of credit to be delivered to Landlord's lender as required by Section 48 of the Lease. (Complaint, ¶ 22).

The Lease is governed by Ohio law. (Complaint, ¶ 4; Ex. A to Complaint, Section 44(a) (ECF No. 5-1, PageID #1816).) As a matter of basic contract interpretation under Ohio law, the events that Landlord alleges do not constitute a breach of the Lease. *Heritage Ct., L.L.C. v. Merritt*, 2010-Ohio-1711, ¶ 14, 187 Ohio App. 3d 117, 122, 931 N.E.2d 194, 199 ("It is well established that leases are contracts and, as such, are subject to traditional rules governing contract interpretation."); *EAC Properties, L.L.C. v. Brightwell*, 10th Dist. Franklin No. 10AP–853, 2011–

Ohio–2373, ¶ 13 ("This Court must interpret the Lease "to carry out the intent of the parties, as that intent is evidenced by the contractual language."). Indeed, contrary to Landlord's assertions, the plain language of the Lease does not require CVS to have delivered a letter of credit.

        1.    <u>A Loan Secured By The Premises Was Not Outstanding When Guarantor's Credit Rating Dropped</u>.

Landlord alleges that "[o]n or before September 25, 2025, the credit rating of the Guarantor (CVS Corporation) was downgraded below Baa2 . . . ." (Complaint, ¶ 21.) In support of this allegation, Landlord cites a press release dated December 16, 2024, which states that Moody's Ratings "downgraded the ratings of CVS Health Corporation (CVS) including the senior unsecured notes to Baa3 from Baa2; the senior unsecured shelf to (P)Baa3 from (P)Baa2, the junior subordinated notes to Ba1 from Baa3 and the senior unsecured commercial paper rating to Prime-3 from Prime-2 with a stable outlook." (Complaint, ¶ 21; Complaint, Ex. E (ECF No. 5-1, PageID #2194).) A second press release dated August 11, 2025, also referenced by Landlord states that Moody's "assigned a Baa3 rating to the new senior unsecured notes issuance of CVS Health Corporation ("CVS")." (Complaint, ¶ 21; Complaint, Ex. E (ECF No. 5-1, PageID #2199).) This August 11, 2025 press release goes on to note that the credit ratings previously assigned in December 2024 remained unchanged. (*Id.*) Thus, based on Plaintiffs' own pleadings, the Guarantor's credit rating dropped in December 2024 and stayed in place through at least August 11, 2025.

There is no allegation in the Complaint, however, that Landlord had an outstanding Loan at the time of the credit rating drop in December 2024. To the contrary, Landlord alleges that it had an outstanding Loan in September 2025, nine months *after* the credit rating drop. (Complaint, ¶ 17.)

6

The Lease requires that a letter of credit be provided only when Guarantor's credit rating drops "***and* a Loan shall be outstanding**." (Complaint, Ex. A, Section 48) (emphasis added).) *See Essex Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*, 282 F. App'x 406, 410 (6th Cir. 2008) (The word "'and' presumptively should be read in its 'ordinary' conjunctive sense"). Absent the existence of an outstanding Loan, a change in Guarantor's credit rating does not obligate CVS to deliver a letter of credit to a non-existent lender.

Moreover, Section 48 of the Lease states that CVS shall deliver the letter of credit to Landlord's Lender "within thirty (30) days of such downgrade." Thirty days from the date of the Guarantor's credit downgrade was January 15, 2025—well before Landlord received the alleged Loan at issue here, and well before Landlord sent any alleged "notice" letter to CVS. Thus, even if all other conditions mandating the delivery of a letter of credit were met (they were not), CVS could not have delivered a letter of credit within 30 days from the Guarantor's credit downgrade; Landlord had no outstanding Loan at this time and there was no Lender to whom CVS could deliver a letter of credit within 30 days of the credit downgrade.

It makes sense that CVS would be required to deliver a letter of credit to Landlord's lender only if a Loan, secured by the Premises, is outstanding at the time of the credit rating drop. A letter of credit is designed to provide a lender with additional assurances that a party will be able to satisfy its payment obligations. *See All Serv. Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil*, S.A., N.Y. Branch, 921 F.2d 32, 34 (2d Cir.1990) ("Generally, letters of credit are designed to substitute for, and therefore support, an obligation to pay."). In order to dispel any concerns about a borrower's ability to pay, a lender may request a letter of credit, which the lender may draw on for payment. *See MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 295 (S.D.N.Y. 2006).

7

If Guarantor's credit rating dropped while a Loan was outstanding, CVS was required to obtain a letter of credit "in an amount equal to the next succeeding two (2) years of base rent" payable under the Lease. (Complaint, Ex. A, Section 48.) If Section 48 of the Lease were to apply and a letter of credit were required, this means that a Lender of any outstanding Loan would be able to draw on the letter of credit in the event that CVS, or its Guarantor, was unable to make rent payments under the Lease.[3] It is reasonable that a lender who extended financing would want additional assurances if a party's credit rating dropped *after* the lender extended that financing. When a lender provides a loan, it makes that loan based on the information known as of that date. But here, when the unnamed Lender extended the alleged Loan to Landlord in September 2025, Landlord's lender would have been aware of Guarantor's then-existing credit rating and would have extended the Loan based on that information. Thus, there would not be a need to provide additional assurances in the form of a letter of credit based on a change in Guarantor's credit rating, because no such change would have occurred.

Because a Loan was not outstanding at the time of the Guarantor's credit rating drop, there was no lender to whom a letter of credit could have been delivered within 30 days of the credit rating drop, and the only loan referenced in the Complaint was extended in September 2025 (over nine months *after* the Guarantor's credit rating drop), CVS was not required to deliver a letter of credit to Landlord's Lender.

        2.      Plaintiffs Fail To Allege A Loan Secured By The Premises Was Extended To Landlord.

Plaintiffs' claim for breach of the Lease fails for the separate and independent reason that there is no allegation in the Complaint that the Loan was secured by the Premises. Generally, when

---

[3] There is no allegation in the Complaint that CVS is in default of the Lease for failing to satisfy its rent or other payment obligations.

8

a term is "expressly defined, then that word should be given its expressed meaning whenever it is used in the contract." *See Sutton Bank v. Progressive Polymers, L.L.C.*, 2020-Ohio-5101, ¶ 18, 161 Ohio St. 3d 387, 392 (explaining that courts must use a contractual definition unless "doing so would produce absurd results in the sense of results that the parties. . . are very unlikely to have agreed to seek"). *See also*, *Navarro v. P&G*, 515 F. Supp. 3d 718, 741 (S.D. Ohio 2021) (when a term is defined in a contract, the plain language meaning of the word is irrelevant).

"Loan" is expressly defined in the Lease as a loan or loans "to Landlord which is secured by a mortgage, deed of trust or similar instrument with respect to the Premises and of which Tenant is advised in writing by Landlord." (Complaint, Ex. A, Section 17.) Nowhere in the Complaint or in any of the exhibits to the Complaint do Plaintiffs claim that a Lender extended a Loan to Landlord that was "secured by a mortgage, deed of trust or similar instrument with respect to the Premises." (*Id.*)

Plaintiffs' failure to allege the existence of a Loan that was secured by a mortgage or other similar instrument "with respect to the Premises" is fatal to their claim that CVS breached the Lease agreement by failing to deliver a letter of credit.

   3. <u>Landlord Never Notified CVS In Writing Of A Loan Secured By The Premises</u>.

Another condition of Section 48 of the Lease that must be satisfied before CVS is required to deliver a letter of credit is that Landlord notify CVS in writing of a Loan secured by the Premises. (Complaint, Ex. A, Section 48.) There is no allegation that Landlord complied with this contractual requirement.

Landlord alleges it notified CVS that a Loan had been issued via an undated letter sent on or around September 25, 2025. (*Id.* at ¶ 17, Ex. D (ECF No. 5-1, PageID #2188).)  This letter, however, does not provide notice to CVS of the extension of a Loan to Landlord that was secured

9

by the Premises, nor is the stated purpose of the letter to provide notice to CVS of a Loan secured by the Premises.

The subject line of the letter states "Certificate of Insurance" and "CVS Store No. 2518," and the letter expressly states that its purpose "is to notify Tenant that the Landlord's lender has requested a certificate of insurance ("COI") for the referenced property." (*Id.*) The letter does not state that a Loan, secured by the Premises, was extended to Landlord, it does not provide any details regarding the alleged Loan, and it does not request that a letter of credit be delivered to Landlord's Lender.

Accordingly, even if a Loan did exist at the time of Guarantor's credit rating drop (which Plaintiffs have not alleged), and even if that Loan were secured by a mortgage, deed of trust or similar instrument with respect to the Premises (which Plaintiffs have not alleged), Landlord never provided notice in writing to CVS of the existence of any such Loan. These undisputed allegations are fatal to Landlord's claim for breach of contract and Count One of the Complaint should be dismissed as a matter of law.

          4.    <u>Landlord Never Provided Notice Of A Default And An Opportunity To Cure As Required By Section 23 Of The Lease</u>.

Even if CVS were required to deliver a letter of credit to Landlord's alleged Lender (which it was not), Landlord failed to give CVS a written notice of default and an opportunity to cure as required by Section 23(a) of Lease. An event of default occurs under the Lease if there is a failure to fulfill any obligation under the Lease and "such default shall continue for more than thirty (30) days after written notice therefore from Landlord . . . specifying such default[.]" (Complaint, Ex. A, Section 23(a).) Section 23(a) identifies several instances when an additional cure period beyond this 30 days is allowed.

In order to satisfy the notice requirement of Section 23(a), Landlord was required to provide written notice of that default and an opportunity for CVS to cure the alleged default. Landlord never provided CVS with written notice specifying the alleged default of Section 48 of the Lease. Any action taken by Landlord regarding this purported default is in violation of the Lease.

To the extent Landlord may claim that Section 48 does not require Landlord to give notice of a default, any such argument is contrary to the express terms of the Lease. Section 48 states that a failure to deliver a letter credit "shall constitute an Event of Default hereunder for which no *additional* notice or cure period shall apply." (Emphasis added.) Section 48's use of the term "additional" makes clear that the initial notice of default and 30-day cure period required by Section 23(a) must still be given. Any other interpretation would render meaningless the inclusion of "additional" in Section 23(a), which is contrary to basic contract law. *Eastham v. Chesapeake Appalachia, L.L.C.,* 754 F.3d 356, 363 (6th Cir. 2014) ("Under Ohio law, 'a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage.'") citing *Local Mktg. Corp. v. Prudential Ins. Co.,* 159 Ohio App.3d 410, 824 N.E.2d 122, 125 (2004)).

Because Landlord failed to provide written notice to CVS of the alleged default and an opportunity to cure as required by Section 23(a) of the Lease, Landlord's claim for breach of the Lease should be dismissed.

> 5. <u>CVS Is Not In Breach Of The Lease Because Landlord's Purported Loan Is No Longer Outstanding</u>.

Another allegation that prevents Landlord from pursing its claim for breach of the Lease is Landlord's admission that there is no Loan outstanding. Landlord alleges in the Complaint that it

11

paid off the Loan on October 27, 2025, the day it filed this action. (Complaint, ¶ 26.) Without an outstanding Loan, Landlord cannot claim that CVS is in breach of Section 48 of the Lease.

In sum, Landlord's claim for breach of the Lease should be dismissed, because by Plaintiffs' own allegations, there is no outstanding Loan, there was not an outstanding Loan at the time of Guarantor's credit rating downgrade, there is no allegation of a Loan secured by the Premises, CVS was never notified of the existence of a Loan secured by the Premises, and notice of an alleged default and opportunity to cure were not given to CVS.

**B. Plaintiffs' Claim For Breach Of The Guaranty Fails Because CVS Did Not Default Under The Lease.**

In Count Two of the Complaint, Plaintiffs allege that Guarantor "executed a Guaranty of the Tenant's obligations under the Lease including payment of all damages owed to the Landlord in the event of a breach by the Tenant." (Complaint, ¶ 38.) As a result of CVS's alleged breach of the Lease, and the alleged corresponding breach of the Guaranty, Landlord claims damages in excess of $25,000. (Complaint, ¶ 39.) The Guaranty is governed by New York law. (Complaint, Ex. F.)

Because Plaintiffs' claim for breach of the Guaranty is premised on its claim that CVS breached the Lease, and because Plaintiffs' claim for breach of the Lease fails as a matter of law, Plaintiffs' claim for breach of the Guaranty likewise fails and should be dismissed. *See Santander Bank, N.A. v. Rubin Trading Corp.*, 68 Misc. 3d 1013, 1022, 130 N.Y.S.3d 210, 218 (N.Y. Sup. Ct. 2020) (finding that claim for breach of guaranty failed because plaintiff failed to prove underlying claim).

**C. CVS Is Not In Breach Of The Lease And Plaintiffs' Claim for Declaratory Judgment Fails.**

To obtain declaratory judgment, a party must "plausibly allege facts that, 'under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Saginaw Cnty., Michigan v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)). "Where there is no real controversy or justiciable issue between the parties," a court may dismiss a declaratory judgment action. *Lima Ref. Co. v. Linde Gas N. Am., LLC*, 2022-Ohio-2185, ¶ 29 (Ct. App.).

Plaintiffs seek a declaratory judgment that CVS is in default under the Lease because it failed to tender a letter of credit and CVS's default caused the cross-default of the Maryland Lease and the Massachusetts Lease. (Complaint, ¶ 45 – ¶ 50.)

But because Plaintiffs cannot establish that CVS defaulted under the Lease by failing to deliver a letter of credit, there is no default under the Maryland Lease or the Massachusetts Lease either, and Plaintiffs' declaratory judgment claim fails and the Court should dismiss Count Three of the Complaint.

### D. Landlord's Claim For Restitution Fails Because CVS Did Not Breach The Lease.

Finally, like Counts One through Three of the Complaint, Landlord's claim for restitution similarly fails because CVS did not breach the Lease.

Under R.C. 1923.02(A)(9), a lessor may institute a forcible entry and detainer action "against [lessees] who have breached an obligation imposed upon them by a written rental agreement." R.C. 1923.061(A). If the lessor is successful, he is entitled to a writ of restitution of the premises. *See David v. Edwood Dev. Co.*, C.A. NO. 19252, 2000 Ohio App. LEXIS 46, at *6-7 (Ct. App. Jan. 12, 2000).

When a lessor fails to prove, as here, a breach of the lease, denial of a writ of restitution is proper. *See e.g., Hartley v. Brown Publ'g Co.*, 2006-Ohio-999, ¶ 37 (Ct. App.) (finding that where

the plain terms of the lease did not establish tenant's breach, denial of a writ of restitution was proper.)  Therefore, Landlord's failure to establish a breach of the Lease requires this Court to dismiss Landlord's claim for restitution as a matter of law.

## **CONCLUSION**

Section 48 of the Lease is clear: CVS must deliver a letter of credit only if the Guarantor's credit rating drops, a Loan secured by the Premises is "outstanding," and Landlord provides notice in writing of that Loan. (Complaint, Ex. A, Section 48.) Only then is CVS required to deliver a letter of credit to "Lender within thirty (30) days of such downgrade." (*Id*.). When Guarantor's credit rating falls and there is not an outstanding Loan, as happened here, and there is no Lender to whom a letter of credit can be delivered within 30 days of such downgrade, CVS is not required to deliver a letter of credit.

Plaintiffs' Complaint rests entirely on the allegation that CVS breached the Lease by failing to tender a letter of credit to Landlord's Lender. For all of the reasons explained herein, CVS was not required to deliver a letter of credit, and as a result, is not in breach of the Lease. Plaintiffs' inability to establish a claim for beach of the Lease requires a dismissal of the Complaint in its entirety, with prejudice.

Dated: November 26, 2025                                   Respectfully submitted,


                                                      */s/ Julie A. Crocker*
Julie A. Crocker (0081231)
Taft Stettinius & Hollister LLP
200 Public Square Suite 3500
Cleveland, OH  44114-2302
Telephone: (216) 241-2838
Facsimile: (216) 241-3707
jcrocker@taftlaw.com

Nicholas J. Pieczonka (0087062)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
Telephone: (513) 357-9603
Fax: (513) 381-0205
npieczonka@taftlaw.com

Jonathan N. Olivito (0092169)
Taft Stettinius & Hollister LLP
41 South High Street, Suite 1800
Columbus, OH  43215-6106
Telephone: (614) 220-0236
Fax: (614) 221-2007
jolivito@taftlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 26, 2025, the foregoing was served via the Court's CM-ECF system upon the following counsel of record for Plaintiffs:

Christopher B. Burch
Bailey Cavalieri LLC
10 W. Broad Street, Suite 2100
Columbus, OH 43215
Telephone: (614) 229-3293
Fax: (614) 221-0479
cburch@baileycav.com

*Attorney for Plaintiffs*

                                           */s/ Julie A. Crocker*
                                           Julie A. Crocker (0081231)

                                           *One of the Attorneys for Defendants*